UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

_____

UNITED STATES OF AMERICA          CRIMINAL NO. 05-50084

versus                            JUDGE STAGG

CASSANDRA SMITH                   MAGISTRATE JUDGE HORNSBY

_____

## REPORT AND RECOMMENDATION

**Introduction**

Before the court is Defendant's Motion to Suppress (Doc. 14). The motion seeks to suppress evidence obtained following a routine traffic stop in Greenwood, Louisiana. During the stop, the police officer patted Defendant's front pockets, which led to the discovery of a pill bottle. The officer examined the bottle and saw two jagged rocks inside the bottle that he believed to be crack cocaine. He then opened the bottle to confirm his belief. A subsequent search of the vehicle resulted in the seizure of marijuana from the glove compartment and a firearm from the trunk.

Defendant argues that the officer's actions in frisking Defendant for weapons was objectively unreasonable under Terry v. Ohio, 392 U.S. 1 (1968). She argues that, at the time of the traffic stop, Defendant had committed only a traffic offense; that there were no specific, articulable facts which would have led a reasonable officer to believe that he was dealing with an armed and dangerous individual; that, even if the officer was justified in performing a pat down of Defendant for weapons, the officer's seizure and opening of the

pill bottle exceeded the scope of a lawful <u>Terry</u> search; and that the officer could not reasonably have believed that the bottle contained a weapon or contraband.

**The Evidence**

Officer Earlton Parker of the Greenwood Police Department was the only witness at the evidentiary hearing. Officer Parker has five years of experience as a police officer, and he currently works as a patrolman. He made the traffic stop of Defendant at approximately 1:41 a.m. on May 7, 2005.

Based on the evidence at the hearing, the court finds the following facts. Officer Parker observed the vehicle driven by Defendant drift off the road and onto the shoulder of Highway 79. About half of Defendant's car went beyond the right fog line on the highway. Officer Parker then positioned his vehicle behind Defendant's vehicle in preparation to make a routine traffic stop.[1] After the stop, Defendant exited her vehicle, and she and Officer Parker began talking in the area between the two vehicles. That area was illuminated by the lights on Officer Parker's car and can be clearly seen in the videotape of the stop.[2]

---

[1] At the time of the stop, Officer Parker also believed that Defendant's vehicle did not have a proper license tag on the vehicle. It turned out, however, that the license plate was displayed inside the window of the vehicle. In any event, Officer Parker testified that the reason for stopping Defendant's vehicle was improper lane usage.

[2] The videotape of the traffic stop was introduced into evidence at the hearing as Government Exhibit 1. During the relevant period during the traffic stop, however, Officer Parker's microphone malfunctioned and the discussions between Officer Parker and Defendant cannot be heard on the tape.

Officer Parker asked Defendant for her driver's license, but Defendant responded that she did not have a driver's license with her. She gave her name as Cassandra Smith. The videotape of the stop shows that Officer Parker and the Defendant had a conversation that lasted approximately three minutes, and then Officer Parker can be seen putting his hand on Defendant's left front pocket, then moving his hand to her right front pocket and then returning his hand to her left front pocket. Officer Parker testified that he noticed a bulge in Defendant's left front pocket that he thought might be a weapon, and, accordingly, he was checking Defendant's pockets for weapons. When Officer Parker asked Defendant what was in her left front pocket where he saw and felt the bulge, she responded that it was her "pill bottle." Defendant then reached into her left front pocket and retrieved the pill bottle for Officer Parker.

As Defendant withdrew the bottle, Officer Parker turned his body slightly and placed his right hand on his holstered weapon, which he said he did to protect himself in the event Defendant pulled a weapon from her pocket. Officer Parker then held the pill bottle up into his car's lights so he could see inside the bottle. He testified that he saw two jagged rocks inside the bottle that appeared to be contraband. He opened up the bottle and found two items that he believed to be crack cocaine. He then placed Defendant under arrest, handcuffed her and read her rights to her.

Officer Parker then conducted a more complete pat down of Defendant for weapons. He also asked her if she had any weapons or drugs in the vehicle. She stated she did not.

Officer Parker then asked Defendant if she minded if he searched the vehicle. Defendant responded that she did not mind. Officer Parker testified that Defendant consented voluntarily to the search and that no force or coercion was used in order to obtain her consent to the search.

Officer Parker then began searching Defendant's vehicle. He found a "live bullet" on the front console of the vehicle. He opened the glove compartment and found a bag of suspected marijuana. The two passengers in the vehicle were then placed under arrest and also patted down. Officer Parker then searched the trunk, where he found the pistol that is at issue in this prosecution. He testified that the serial number on the gun had been scratched off. Officer Parker testified that Defendant claimed both the gun and the bag of marijuana. He testified that Defendant told him the marijuana was hers, and that she had recently smoked some of it with her sister.

There was nothing unusual about the pill bottle itself. The name on the bottle, Cassandra Smith, matched the name that Defendant gave Officer Parker during the stop. He testified that he opened the bottle to see what the jagged items were. He did not do so for his safety; he admitted he was looking for contraband when he opened the bottle.

The evidence was left open on the hearing on the Motion to Suppress so that the pill bottle in question, which was introduced as Defendant's Exhibit 2, could be delivered to counsel and the court. The undersigned examined the pill bottle closely (through a clear evidence bag), and it is a common prescription medication bottle, amber in color, with a label

for a prescription in the name of Cassandra Smith. While not completely transparent due to its amber color, the contents of the bottle (one jagged rock remains in the bottle) were easily seen by holding the bottle up to any light.

**Law**

The parties agree that resolution of the Motion to Suppress is controlled by the analysis under Terry v. Ohio, supra. Under the two-part Terry inquiry, the court asks whether the police officer's action was (1) justified at its inception; and (2) reasonably related in scope to the circumstances which justified the interference in the first place. Terry, supra, 392 U.S. at 19-20; U. S. v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005).

For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. United States v. Breeland, 53 F.3d 100, 102 (5th Cir. 1995). The Supreme Court has stated that in making a reasonable suspicion inquiry, a court must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. United States v. Arvizu, 534 U.S. 266, 273 (2002). Reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably justify the search and seizure. United States v. Santiago, 310 F.3d 336, 340 (5th Cir. 2002). While a mere hunch will not suffice, reasonable suspicion need not rise to the level of probable cause. Arvizu, supra, 534 at 274.

Regarding the second prong of the Terry inquiry, the detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. United States v. Brigham, 382 F.3d 500, 507 (5th Cir. 2004) (en banc). In the course of effectuating the stop, a police officer may permissibly examine the driver's license and registration and run a computer check on them to investigate whether the driver has any outstanding warrants and if the vehicle is stolen. Id. at 507-508. An officer may also ask the driver about the purpose and itinerary of his trip. Id. at 508. Indeed, the officer's questions need not be related to the purpose of the traffic stop, since detention, not questioning, is the evil at which Terry's second prong is aimed. Id.

Although an officer's inquiry may be wide-ranging, once all relevant computer checks have come back clean, there is no more reasonable suspicion, and, as a general matter, continued questioning thereafter unconstitutionally prolongs the detention. Lopez-Moreno, supra, 420 F.3d at 431. A recognized exception to this rule is that if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed. Id; Brigham, supra, 382 F.3d at 507; United States v. Grant, 349 F.3d 192, 196 (5th Cir. 2003).

**Analysis**

Officer Parker observed Defendant's vehicle drift over the right fog line. That observation gave Officer Parker probable cause to believe that Defendant had violated the

traffic laws of Louisiana.  Therefore, what began as a routine traffic stop was justified at its inception.

The court also finds that the prolonging of the stop, which resulted in the discovery of the pill bottle, did not violate the Fourth Amendment.  After the stop, Officer Parker asked Defendant to produce her driver's license, but she could not do so because she did not have her driver's license with her.  Her failure to produce a driver's license constituted another violation of the traffic laws and justified further questioning (and detention) of Defendant by Officer Parker. United States v. Bain, 135 Fed. Appx. 695 (5th Cir. 2005).

The evidence is clear and uncontradicted that, during his questioning of Defendant, Officer Parker noticed a bulge in Defendant's front pants pocket.  He patted both of Defendant's front pockets.  Defendant told Officer Parker that the object was her pill bottle and she began to remove it from her pocket.  Officer Parker, fearing that the object might be a weapon, placed his hand on his own gun.  Defendant then handed the bottle to Officer Parker, who could easily observe that the bottle contained suspected drug contraband.  Officer Parker confirmed his suspicions by opening the bottle.  Officer Parker then requested and received Defendant's consent to search her vehicle.  The marijuana and firearm were found.

The requirements of Terry are satisfied.  Officer Parker had probable cause to arrest Defendant for the traffic violations.  The patting of her pockets was justified by Officer Parker's reasonable suspicion that the bulge in one of her pockets might be a weapon.  The presence of the jagged rocks in the pill bottle provided Officer Parker with additional

probable cause to arrest Defendant. As Officer Parker had probable cause to arrest Defendant, the subsequent search of her vehicle was a lawful search incident to her arrest. New York v. Belton, 453 U.S. 454 (1981). Under the circumstances, while the court finds Defendant gave valid consent to the search of her vehicle, the court also finds that no consent was necessary for the search at issue in this case. Accordingly,

**IT IS RECOMMENDED** that Defendant's Motion to Suppress (Doc. 14) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Cr. P. 59(b)(2). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 13th day of December, 2005.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE